UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER D.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C19-5875-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erroneously discounted his testimony and the medical opinion of an examining psychologist. Dkt. 8 at 1. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 29 years old, has a college degree and some graduate school education, and has worked as a hotel front desk attendant, call center operator, car wash operator, event setup assistant. Tr. 286, 301-06. In July 2016, he applied for benefits, alleging disability as of April 29, 2016. Tr. 255-63. His applications were denied initially and on reconsideration. Tr. 173-81, 184-97. The ALJ conducted a hearing on February 6, 2018 (Tr. 62-110), and subsequently issued a decision findings Plaintiff not disabled. Tr. 26-55. As the Appeals

Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 6-11.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Plaintiff's seizure disorder, depression, anxiety, and posttraumatic stress disorder ("PTSD") are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform a full range of work at all exertional levels, with the following non-exertional limitations: he cannot drive, or operate heavy machinery such as chainsaws or forklifts. He cannot climb ladders, work at heights, swim, or work near hazards such as open flames or scalding water. He cannot work in places where he could drown or in places where he would be required to work in the dark, or be exposed to paring or butcher knives, ropes, or children.

**Step four:** Plaintiff can perform his past work as an office helper, hotel clerk, and telephone solicitor.

**Step five:** In the alternative, there are also other jobs that exist in significant numbers in the national economy that Plaintiff can perform, and he is therefore not disabled.

Tr. 26-55.

## DISCUSSION

**A.     Plaintiff's Testimony**

As discussed below, Plaintiff raises several challenges to the ALJ's lengthy discussion of his testimony about the severity of his limitations.

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

### 1. Seizure-related allegations

The ALJ summarized Plaintiff's testimony about seizures in detail. *See* Tr. 34-37. The ALJ explained he discounted Plaintiff's description of his seizures because Plaintiff's statements were contradicted by the objective medical evidence, which shows his tonic-clonic seizures occurred far less frequently than Plaintiff alleged. Specifically, the ALJ found Plaintiff had experienced at most five tonic-clonic seizures since his initial seizure in April 2016, and Plaintiff experienced no seizures between April 2016 and April 2017. Tr. 37-41. The ALJ noted Plaintiff's neurologist opined his most recent seizures were caused by sleep deprivation, and recommended Plaintiff focus on optimizing his sleep. Tr. 41.

The ALJ also noted Plaintiff inconsistently reported the frequency of his partial seizures, which are psychogenic in nature rather than epileptic. Tr. 42. The ALJ indicated although Plaintiff reported experiencing partial seizures 7-10 times a day, if his seizures were truly occurring at that frequency, a partial seizure should have been observed during one of Plaintiff's many treatment appointments, rather than only observed during one inpatient hospital stay when he was not taking medication. Tr. 42-43.

Plaintiff challenges several aspects of the ALJ's assessment of his testimony about his seizures. First, Plaintiff contends the ALJ erroneously focused on whether his seizures were observed or documented, arguing there is no requirement a claimant's seizures be documented in order to credit the claimant's testimony. Dkt. 8 at 5. This argument misses the ALJ's point: the ALJ was noting an inconsistency between the objective medical record and Plaintiff's allegation that he experienced tonic-clonic seizures 2-3 times per month. Plaintiff has not pointed to any evidence showing he reported to his providers he experienced seizures at the same frequency that

he alleged to the ALJ, and thus Plaintiff has failed to show the ALJ unreasonably found Plaintiff's testimony is inconsistent with the objective medical record.

Plaintiff goes on to argue even if he only experienced tonic-clonic seizures once per month and partial seizures a couple of times a week, this frequency would still be disabling. Dkt. 8 at 5. Again, this argument misses the ALJ's point: this section of the ALJ's decision explains why Plaintiff's specific allegations are inconsistent with the record. Asserting that other statements would still describe disabling limitations does not show the ALJ erred in finding Plaintiff's statements are not consistent with the record.

Next, Plaintiff argues the ALJ erred in failing to acknowledge the evidence regarding his partial seizures. Dkt. 8 at 6-7. Plaintiff is incorrect because the ALJ thoroughly discussed this evidence. *See* Tr. 37-39. Plaintiff also posits the ALJ unreasonably found Plaintiff failed to report certain tonic-clonic seizures or seek treatment for them, but fails to explain why the ALJ's assessment is unreasonable. Dkt. 8 at 8. Although Plaintiff presumably contends his lack of reporting/treatment should be interpreted in a way that does not suggest a lack of severe symptoms, he has not shown the ALJ was unreasonable in finding his lack of reporting undermined his allegations of significant limitations.

Lastly, Plaintiff suggests the ALJ erred in finding his tonic-clonic seizures would "again come under control" if he followed his neurologist's treatment recommendation to get more sleep, because his seizures have never been under control. Dkt. 8 at 8-9. The ALJ's finding apparently refers to the time-period between April 2016 and April 2017 when the objective medical record did not document any tonic-clonic seizure activity. *See* Tr. 41. The Court this cannot say the ALJ's finding is not supported by substantial evidence. Accordingly, the Court

finds Plaintiff has failed to establish the ALJ harmfully erred in discounting Plaintiff's seizure-related allegations.

### 2. Allegations related to other conditions

Plaintiff contends the ALJ erred in rejecting his allegations of headaches and mental health conditions, and argues various other findings in the ALJ's decision are either unreasonable or unsupported by substantial evidence. Dkt. 8 at 9-15. Plaintiff contends the ALJ erred in noting Plaintiff's headaches were rarely treated and never in the emergency room, because his headaches were treated as part of his seizure disorder. Dkt. 8 at 9. But the ALJ cited Plaintiff's limited treatment and few complaints of headaches as inconsistent with his testimony that he experienced multiple headaches every day, and Plaintiff has not shown how this assessment is unreasonable or unsupported.

Plaintiff also challenges the ALJ's findings with regard to his mental health treatment records. Dkt. 8 at 9-10. He argues the ALJ erred in discounting his allegations of the mental health conditions that underlie his partial seizures because the record does not document any mental health treatment before his first seizure. Dkt. 8 at 9. But the ALJ did not cite his lack of earlier treatment as a reason to discount Plaintiff's testimony, but simply mentioned that fact in his summary of the treatment record. *See* Tr. 43. Furthermore, the ALJ correctly noted during that first appointment, his provider adopted his self-reported prior diagnoses. Tr. 43 (referencing Tr. 442). That other providers did not adopt those prior diagnoses (as noted by Plaintiff) does not show the ALJ erred. Dkt. 8 at 9-10.

Plaintiff argues the ALJ erred in citing generally unremarkable mental status examinations as a reason to discount his allegations, because those examinations are intended to detect dementia or psychosis, neither of which Plaintiff alleges. Dkt. 8 at 10. The ALJ did not

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 5

cite the unremarkable quality of the mental status examinations as a reason to discount Plaintiff's testimony, however, but referenced them only in his detailed summary of Plaintiff's treatment or in comparing inconsistent results on consecutive days. Tr. 43-44. Specifically, the ALJ noted that during one examination on May 19, 2016, Plaintiff reported suicidal thoughts, but denied experiencing suicidal thoughts at an examination later that same day. Tr. 44 (citing Tr. 564, 602). Plaintiff argues these reports are not actually inconsistent because during the appointment when he denied suicidal thoughts, he also stated that he felt hopeless and as if he would be better off not being around. Dkt. 8 at 10 (citing Tr. [564]). Although he made the statement, he also specifically denied suicidal ideation or thought of self-harm. *See* Tr. 564. The ALJ further noted on the day before, May 18, 2016, Plaintiff denied any suicidal ideation. Tr. 43 (citing Tr. 444). Accordingly substantial evidence supports the ALJ's finding that Plaintiff made inconsistent reports regarding suicidal ideation during appointments on the same or consecutive days.

Plaintiff next argues the ALJ erred in finding his medication regimen had basically not changed since his earliest mental health treatment of record. *See* Tr. 45. Plaintiff argues his dosages of seizure medication had changed (Dkt. 8 at 11), but the ALJ's finding does not pertain to seizure medications. Plaintiff also contends his psychotropic medications changed (Dkt. 8 at 11 (citing Tr. 717 (indicating Plaintiff restarted Olanzipine)), but the ALJ acknowledged Plaintiff's use of Olanzipine. Tr. 45. Plaintiff has not shown error in the ALJ's assessment of Plaintiff's use of medication.

Next, Plaintiff argues the ALJ erred in finding his lack of treatment with a psychiatrist or psychologist, and his conservative treatment overall, suggest his symptoms are less severe than alleged. Dkt. 8 at 11-12. According to Plaintiff, he should not be penalized for medical decisions outside of his control. *Id*. Nonetheless, an ALJ properly considers the extent of the

treatment a claimant receives, and Plaintiff has not shown the ALJ erred in finding his treatment to be relatively infrequent, routine, and conservative, or in discounting his allegations of disabling limitations on that basis. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Further Plaintiff has not shown there was some other reasons why he did not receive treatment that would undercut the ALJ's analysis. Accordingly the Court finds the ALJ did not err.

### 3. Inconsistencies

The ALJ found a number of inconsistencies that undercut the reliability of Plaintiff's allegations. Tr. 45-49. An ALJ properly considers whether a claimant's allegations are consistent with other evidence in the record. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). Plaintiff challenges many of the ALJ's findings related to inconsistencies, as discussed below. Although some of the ALJ's findings may constitute harmless error, as discussed *infra*, the Court first discusses those findings that are affirmed.

First, Plaintiff argues the ALJ erred in finding his activities of parenting and tutoring children were inconsistent with his allegations of his seizures being triggered around his daughter and children in general. *See* Tr. 46-47. The ALJ noted Plaintiff had 40-50% custody of his preschool-age daughter, and the level of care required in caring for a child of that age for that amount of time was inconsistent with the limitations he described being caused by his partial seizures. *Id.* Plaintiff contends these findings are erroneous because parenting is not incompatible with disability, and because he was not a full-time parent and received help from his fiancée. Dkt. 8 at 12-13. Parenting may not be per se incompatible with disability, but the ALJ reasonably found parenting a preschool-age child even 40-50% of a week was inconsistent

with Plaintiff's allegation of experiencing partial seizures 7-10 times per day, each of which impacted his ability to function for 20-60 minutes. Tr. 46. The ALJ also noted Plaintiff occasionally brought his daughter with him to medical appointments, which demonstrated his ability to care for his child independently, and Plaintiff tutored and babysat his neighbor's children as well; these findings further support the ALJ's determination that Plaintiff's testimony is inconsistent with his child-related activities. Tr. 46-47.

Next, Plaintiff challenges the ALJ's findings regarding his marijuana use. The ALJ noted Plaintiff made many inconsistent statements regarding his use of marijuana, sometimes reporting he never used because he was taking medications, sometimes reporting he used occasionally, and sometimes reporting he used every day. Tr. 47. The ALJ also noted Plaintiff told emergency room providers on one occasion he had not been using any drugs, but a drug screen was positive for marijuana. Tr. 47 (citing Tr. 1053, 1059). Plaintiff argues if the ALJ intended to indicate his marijuana use was causing or exacerbating his symptoms, the ALJ did not cite any evidence supporting such a finding. Dkt. 8 at 13. But this was not the ALJ's purpose: the ALJ explicitly found Plaintiff's "inconsistent statements regarding this drug use calls into question the veracity of other statements made in the record. Moreover, the claimant's misrepsentations and/or omissions have the potential to significantly hinder or wholly prevent treatment." Tr. 47. Plaintiff has not shown this inference is unreasonable or unsupported. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to reject claimant's testimony).

Plaintiff also challenges the ALJ's finding that although Plaintiff alleged his depression caused him to neglect his personal hygiene, the medical records do not corroborate this. Tr. 47. Plaintiff contends the medical records do not comment one way or the other about Plaintiff's

hygiene (Dkt. 8 at 13), but he is incorrect. The medical record consistently describes Plaintiff as having no hygiene or grooming problems. *See, e.g.*, Tr. 444, 470, 500, 556, 562, 568, 571, 600. Thus, Plaintiff has not shown the ALJ's finding is erroneous.

The ALJ also noted Plaintiff testified at the hearing his family members trigger his PTSD and seizures and he therefore avoids them (Tr. 93), but the record showed he had contact with his family in 2016, and in 2017 he reported his brother helped him care for his daughter. Tr. 48. Plaintiff contends the contact he had with his family predated the hearing, suggesting he could have avoided them more recently. Dkt. 8 at 14. Plaintiff's offer of an arguably reasonable interpretation does not establish that the ALJ's interpretation of the record is unreasonable, particularly in light of other evidence where Plaintiff reported having a good relationship with some of his brothers. *See* Tr. 463, 465, 603, 666.

Plaintiff goes on to argue the ALJ erred in finding an inconsistency in Plaintiff's reports of receiving disability benefits (Tr. 48), because he was on state disability benefits. Dkt. 8 at 14. But the ALJ specifically noted instances where Plaintiff reported receiving *Social Security* benefits, which is inaccurate. *See* Tr. 525, 618, 720.

The ALJ also cited evidence showing Plaintiff reported in December 2016 he had been "in and out" of the hospital since his April 2016 seizure, even though the record documents no such hospitalizations. Tr. 48 (citing Tr. 647). Plaintiff posits he could have been referring to his various medical appointments (Dkt. 8 at 14), but this interpretation is not reasonable, and does not in any event, establish the ALJ's interpretation is unreasonable.

Next, Plaintiff argues the ALJ erred in finding Plaintiff incorrectly referred to his companion dog as a service dog that warns him when his seizures are coming. Tr. 48. Plaintiff acknowledges his dog is actually a companion dog, rather than a service dog, but contends these

terms are used interchangeably. Dkt. 8 at 14. This argument is belied by the evidence cited by the ALJ, wherein Plaintiff requested his companion dog be registered as a service animal, suggesting Plaintiff was aware of the distinction in terminology. *See* Tr. 632. Plaintiff has not shown the ALJ unreasonably found Plaintiff had overstated his dog's training.

Next, the ALJ found although Plaintiff told a therapist he had been talking with his neurologists about having surgery to treat his seizures, the medical record did not indicate that surgery had ever been discussed with Plaintiff. Tr. 48. Plaintiff contends he could have asked his neurologist about it and the neurologist did not report it in the notes. Dkt. 8 at 14. This speculation does not establish error in the ALJ's finding. Plaintiff also argues even if he did tell a therapist that he was talking with his neurologists about having surgery, this statement would have no import. Dkt. 8 at 14. On the contrary, it could constitute an exaggeration intended to suggest Plaintiff's seizures were more severe. Plaintiff has not shown error in this aspect of the ALJ's decision.

The ALJ noted Plaintiff reported an ability to shop alone and manage his own money in June 2017, but testified at the hearing he could not shop for groceries or manage his money. *Compare* Tr. 85 *with* Tr. 720. Although he did equivocate to some degree on this point later in the hearing (Tr. 86-87), he initially testified he could not shop alone or manage his money. The ALJ did not err in finding Plaintiff made inconsistent statements about his ability to shop alone and manage his own money.

In light of all of these valid findings regarding inconsistencies between Plaintiff's allegations and the remainder of the record, any error in the ALJ's findings (Tr. 48-49) regarding Plaintiff's statements regarding his friends, his bike accident, and his sleep is harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Also

harmless is any error in the ALJ's reasoning that Plaintiff's description of his seizure triggers was inconsistent with Plaintiff's lack of seizures during the hearing, because some of the seizure triggers he described at the hearing were arguably present at the hearing. *See* Tr. 45-46, 88-93. Even if, as Plaintiff contends, this reasoning constitutes disfavored "sit and squirm" reasoning (see *Verduzco*, 188 F.3d at 1090), this error is also harmless in light of the abundance of valid reasons the ALJ provided for discounting Plaintiff's subjective testimony.

Because Plaintiff has failed to meet his burden to show harmful legal error in the ALJ's assessment of his subjective testimony, the Court affirms the ALJ's findings in this regard.

**B.     Opinion of Tasmyn Bowes, Psy.D.**

Dr. Bowes examined[3] Plaintiff in June 2016 and completed a DSHS form opinion describing his symptoms and limitations. Tr. 465-71. Dr. Bowes opined Plaintiff has, *inter alia*, marked limitations in his ability to (1) complete detailed tasks; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 469.

The ALJ summarized Dr. Bowes's findings and found them inconsistent with the treatment record, because Plaintiff's appointments with treating providers during this time period contained many normal findings. Tr. 44-45 (citing Tr. 552, 556-59). The ALJ also found Dr. Bowes relied primarily on Plaintiff's subjective reporting, which was not entirely reliable. Tr. 50. The ALJ further found Dr. Bowes's opinion was inconsistent with Plaintiff's activities, as well as inconsistent with the mostly normal mental status examination during Dr. Bowes's evaluation. *Id*.

---

[3] At the time Dr. Bowes examined Plaintiff, he used a different name.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 11

Plaintiff challenges some of the ALJ's reasons, arguing Dr. Bowes's evaluation was more thorough than the treating providers', and therefore the ALJ should have credited Dr. Bowes's opinion over the treating providers'. Dkt. 8 at 18. Plaintiff's opening brief fails to challenge all of the reasons the ALJ provided for discounting Dr. Bowes's opinion, namely the inconsistency with Plaintiff's activities and Dr. Bowes's mental status examination findings, as well as Dr. Bowes's reliance on Plaintiff's non-credible self-reporting. *See* Tr. 50. Arguments made for the first time on reply are insufficient. *See, e.g.*, *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009) (holding that a new theory, first raised in a reply brief, is waived). The Court cannot say the ALJ unreasonably found plaintiff's activities are at odds with the doctor's opinion. As such even if there are alternative ways of looking at the evidence as Plaintiff suggests, the Court is required to affirm the ALJ's determination.

The Court further notes that even on reply, Plaintiff fails to challenge the ALJ's finding that Dr. Bowes relied primarily on Plaintiff's non-credible self-reporting. Accordingly, the Court affirms the ALJ's assessment of Dr. Bowes's opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 27th day of March, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge